**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| TUCSON ELECTRIC POWER COMPANY, ) | ) | |
| Plaintiff, ) | ) | No. CIV 08-680-TUC-CKJ |
| vs. ) | ) | **ORDER** |
| EL PASO ELECTRIC COMPANY, ) | ) | |
| Defendant. ) | ) | |

Pending before the Court is Defendant's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for a Stay [Doc. # 12]. A response and a reply have been filed. Counsel presented oral argument to the Court on September 3, 2009.

*Factual and Procedural Background*[1]

Plaintiff Tucson Electric Power Company ("TEP") is a public utility that provides retail electric service in Southeastern Arizona. TEP's principal generating assets include two coal-fired generating units at the Springerville Station near Springerville, Arizona; an interest in the Navajo Station at Page, Arizona; an ownership interest in the Luna Station near Deming, New Mexico; and an interest in the Four Corners and San Juan Stations at Farmington, New Mexico.

---

[1]Unless otherwise stated, the facts are taken from the Complaint.

Defendant El Paso Electric Company ("EPE") is a vertically-integrated public utility engaged in the generation, transmission and distribution of electricity in west Texas and southern New Mexico. EPE's generation resources external to its control area include a share of the generating capacity in the Palo Verde Nuclear Generating Station (the "Palo Verde Station"), a three-unit nuclear-fueled generating station located in Wintersburg, Arizona, and a share of the generating capacity available from the Four Corners Station.

TEP asserts that EPE is subject to regulation as a public utility in New Mexico and Texas and that both EPE and TEP are subject to the Federal Energy Regulatory Commission's ("FERC") jurisdiction.

The TEP and EPE electric systems are directly interconnected at the Springerville substation and at the Greenlee substation.

In 1972, EPE began working to establish appropriate arrangements for transmission of capacity and energy from the Palo Verde Station (which was then under construction) across Arizona and New Mexico for delivery to its electric system in New Mexico. In January 1982, TEP proposed an energy exchange under which energy from certain of TEP's generating units located in eastern Arizona and northern New Mexico would be delivered to EPE at substations near the New Mexico/Arizona border, and an equivalent amount of energy from EPE's share of the Palo Verde Station would be delivered to TEP at substations closer to TEP's native load and the California market.

At the time the power exchange was proposed, both parties needed additional transmission capacity in the eastern Arizona/western New Mexico transmission corridor. Construction of a new 345 kV transmission line between Springerville and Luna would both facilitate deliveries into southern New Mexico and strengthen the north-south transmission system in western New Mexico and Eastern Arizona. It also would permit TEP to defer construction of a new line between Springerville and Greenlee.

In 1982, TEP and EPE entered into the Tucson-El Paso Power Exchange and Transmission Agreement, dated as of April 1982 (the "1982 Agreement"). Pursuant to Article 5 of the 1982 Agreement, entitled, "Exchange of Capacity and Energy," EPE agreed

to deliver up to 300 MW of capacity and energy from the Palo Verde Station to TEP at either the Palo Verde Switchyard or the Westwing Switchyard (at TEP's option), and TEP agreed to deliver a corresponding amount of capacity and energy to EPE at either Greenlee, Springerville, Coronado, San Juan, or Four Corners. There were no charges, costs or losses associated with the exchange of capacity and energy. Article 7 of the 1982 Agreement, entitled "Springerville-Luna 345 kV Circuit," provided for TEP and EPE to cooperate in the construction of a new 345 kV transmission line between TEP's Springerville Substation and EPE's Luna Substation.

In Article 6 of the 1982 Agreement, entitled "Assignment of Transmission Rights," each of the parties agreed to assign certain transmission rights in facilities that it owned to the other party. The assignments included an assignment by EPE to TEP of 200 megawatts of transmission rights in the Springerville-Luna 345 kV circuit and in the existing 345 kV circuit from Luna via Hidalgo to Greenlee.[2] This assignment of transmission rights from EPE to TEP in the Springerville-Luna-Greenlee circuits was to begin with the commercial operating date of the Springerville-Luna circuit and was to continue for a term of 40 years from that date. EPE asserts, in its Motion to Dismiss, that the assignment provided a back-up for TEP's own Springerville-Greenlee line.

Except for charges for transmission losses, there is no incremental charge to TEP for use of the transmission rights that were assigned to it in the 1982 Agreement.

The 1982 Agreement was filed with FERC on February 7, 1983 in Docket No. ER83-311-000. FERC accepted the 1982 Agreement for filing in a letter order, dated March 11, 1983. The 1982 Agreement remains on file with FERC as a filed rate schedule of each

---

[2]The Springerville-Luna 345 kV transmission line is a transmission line approximately 225 miles long that terminates on the northern end at TEP's Springerville Switchyard north of Springerville, Arizona, and on the southern end at the Luna Substation, north of Deming, New Mexico. The Luna via Hidalgo to Greenlee 345 kV transmission line is comprised of two distinct segments, one of which terminates at TEP's Greenlee substation in eastern Arizona and at the Hidalgo Substation, which is near Lordsberg, New Mexico, and the other of which terminates at the Hidalgo and Luna Substations.

1   party.

2       In 2005, TEP acquired a one-third ownership interest in the Luna Station, a 570 MW

3   combined-cycle electric generating facility near Deming, New Mexico that was then under

4   construction. The Luna Station is connected to the Luna Substation, which is jointly owned

5   by EPE and the Public Service Company of New Mexico ("PNM"). The Luna Substation

6   is connected to TEP's Springerville Substation through the Springerville-Luna 345 kV

7   transmission line, and is connected to TEP's Greenlee Substation through the Luna via

8   Hidalgo to Greenlee 345 kV transmission line.

9       TEP asserts that it planned to use the transmission rights in these transmission lines

10  that were assigned to it in the 1982 Agreement in order to deliver its power from the Luna

11  Station to either Greenlee or Springerville. As construction of the Luna Station was nearing

12  completion, EPE sent a letter to TEP, dated October 6, 2005 ("October 6 Letter"). In the

13  October 6 Letter, EPE (a) acknowledged that TEP believed that the 1982 Agreement

14  provided sufficient rights for TEP to transmit power from Luna to TEP's system and (b)

15  notified TEP that it disagreed with TEP's interpretation of the 1982 Agreement. EPE further

16  stated in the letter that if TEP desired to use the EPE transmission facilities for delivery of

17  power from the Luna Station to the TEP system, it would be necessary for TEP to request

18  transmission service for this purpose on EPE's Open Access Same Time Information

19  System.

20      In a letter, dated November 28, 2005 ("November 28 Letter"), EPE offered to sell to

21  TEP either firm or non-firm point-to-point transmission service under the EPE Open Access

22  Transmission Tariff ("EPE OATT") for delivery of power from Luna to Springerville and/or

23  non-firm transmission service under the EPE OATT for delivery of power from Luna to

24  Greenlee. EPE asserts, in its Motion to Dismiss, that only then did TEP assert that the

25  1982 Agreement included the right to subdivide TEP's rights into two paths.

26      EPE filed a complaint against TEP with FERC on January 10, 2006 in Docket No.

27  EL06-45-000 ("EPE Complaint"). In the EPE Complaint, EPE requested a Commission

28  order finding that TEP was required to obtain and pay for transmission service under the

EPE OATT before TEP could utilize EPE's transmission system for transmitting the output of the Luna Station. The next day, TEP filed a counter-complaint against EPE with FERC in Docket No. EL06-46-000 ("TEP Complaint"). In the TEP Complaint, TEP requested a Commission order requiring EPE to permit TEP to use the transmission rights that TEP had acquired in the 1982 Agreement for the purpose of delivering capacity and energy from TEP's share of the Luna Station to the TEP system. Each party filed a timely response.

EPE refused to transmit power from the Luna Station to the TEP system pursuant to the terms of the 1982 Agreement while the FERC Proceedings were pending. EPE's refusal to transmit power to TEP pursuant to the terms of the 1982 Agreement left TEP with only two options: (i) to purchase transmission capacity from EPE (for transmission from Luna to Springerville or Luna to Greenlee), pursuant to EPE's OATT; or (ii) to purchase transmission capacity from PNM (for transmission from Luna to Greenlee), pursuant to PNM's OATT.

In order to procure transmission service from EPE to deliver power from the Luna Station to the TEP system during the pendency of the FERC Proceedings, in or around early 2006, TEP entered into firm and non-firm point-to-point transmission service agreements under the EPE OATT ("OATT Interim Agreements"). The transmission rates charged by EPE under the OATT Interim Agreements to deliver power from the Luna Station to the TEP system were approximately two dollars more per megawatt hour than the transmission rates then being charged by PNM under the PNM OATT. EPE asserts, in its Motion to Dismiss, that the OATT Interim Agreements were filed with an approved by FERC.

Beginning in April 2006, in order to mitigate its damages under the 1982 Agreement, TEP began purchasing from PNM approximately 50,000 MW per month of reserved capacity on PNM's transmission system. TEP purchased the balance of its monthly transmission needs for the Luna Station from EPE at EPE's higher rates. TEP's monthly purchases of transmission capacity from PNM continued through May 2007.

On April 24, 2006, the Commission issued an Order on Complaints in these

proceedings in which it granted the EPE Complaint and denied the TEP Complaint.[3]  On May 24, 2006, TEP filed a timely request for rehearing of the Order on Complaints.  In an Order on Rehearing and Establishing Hearing and Settlement Judge Procedures issued October 4, 2006 (the "Rehearing Order"), the Commission granted in part and denied in part TEP's request for rehearing.  Specifically, the Commission found that the matter should be set for an evidentiary hearing to decide the following issues:

(1) Whether or not the transmission rights given to TEP in sections 6.3 and 6.4 of the 1982 Agreement may only be used for transmission of power from Springerville as the receipt point to Greenlee as the delivery point; and

(2) Whether or not TEP can use its transmission rights granted under the 1982 Agreement to transmit power from the Luna Station to either Springerville or Greenlee.

Pursuant to the Rehearing Order, an evidentiary hearing was held before Administrative Law Judge Herbert Grossman on May 22, May 23, and May 24, 2007 ("Evidentiary Hearing"). On September 7, 2008, Judge Grossman issued the Initial Decision in TEP's favor, in which he made the following rulings with respect to the foregoing issues ("Initial Decision"):

(a) The transmission rights given to TEP in Sections 6.3 and 6.4 of the 1982 Agreement do not limit its use to the transmission of power from Springerville, as the receipt point, to Greenlee, as the delivery point.

(b) TEP may use its transmission rights granted under the 1982 Agreement to transmit power from the Luna Station to both Springerville and Greenlee, as long as transmissions at any one time under the Agreement do not exceed 200 MW on any segment of the circuit.

On November 13, 2008, FERC issued an Order on Initial Decision, which affirmed Judge Grossman's Initial Decision in part and reversed it in a part not material to the issues before

---

[3]This Order is attached to the Court's copy of the Motion as Exhibit 1.

this Court.[4]  In paragraph 77 of the FERC Order, FERC affirmed Judge Grossman's determinations that "[t]he transmission rights given to [TEP] in sections 6.3 and 6.4 of the 1982 Agreement are not restricted for transmission of power from Springerville as the receipt point to Greenlee as the delivery point; and [TEP] can use its transmission rights granted under the 1982 Agreement to transmit power from the Luna station to either Springerville or Greenlee."  FERC also determined that TEP may use the transmission rights that were assigned to it under the 1982 Agreement for, among other things, transmission of power from Luna to Springerville or from Luna to Greenlee.  FERC also ordered EPE to (a) refund to TEP all sums that TEP has paid to EPE for transmission service from El Paso's Luna substation during the pendency of the parties' dispute pursuant to the OATT Interim Agreements, which could have been provided under the 1982 Agreement and (b) pay TEP interest on the refunded amounts, pursuant to the rate set forth in 18 C.F.R. § 35.19a(a)(2)(iii) (2008).  EPE asserts, in its Motion to Dismiss, that the amounts were not awarded as damages, but instead pursuant to the special payment terms in the OATT Interim Agreements.   EPE points out that TEP did not request, and FERC did not order, EPE to reimburse TEP for any amounts that TEP had paid to others for transmission of service from Luna.

TEP asserts that the FERC Order confirms that the 1982 Agreement is the relevant filed rate schedule for transmission of power from the Luna Station to either Springerville or Greenlee and that the FERC Order is binding on the parties and is immediately enforceable pursuant to, *inter alia*, 16 U.S.C. § 825l(c).

On or about December 4, 2008, following issuance of the FERC Order, EPE paid TEP $10,665,308 by wire transfer, which represented a refund of only the amounts paid by TEP to EPE for the purchase of transmission capacity pursuant to the EPE OATT ("December 2008 Refund").

_____

[4]This order is attached to the Complaint as Exhibit 3.  EPE's Application for Rehearing is pending in the FERC proceedings.

TEP asserts that the December 2008 Refund did not reimburse TEP for any amounts paid by TEP to PNM, for the purchase of transmission capacity pursuant to the PNM OATT. Further, TEP assert that, during the pendency of the FERC proceedings, EPE willfully and wrongfully failed and refused to honor the terms of the 1982 Agreement, thereby forcing TEP to cover its transmission needs by, among other things, purchasing transmission capacity from PNM.

On December 30, 2008, TEP filed a Complaint against EPE alleging claims of breach of contract and breach of implied covenant of good faith and fair dealing. On February 23, 2009, EPE filed a Motion to Dismiss.[5]  A Response and Reply have been filed.

*Motion to Dismiss*

EPE asserts that TEP's Complaint fails to state a claim on which relief can be granted. A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed.R.Civ.P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Further, a complaint must set forth a set of facts that serves to put defendants on notice as to the nature and basis of the claim(s). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *see also* Fed.R.Civ.P. 12(b)(6). In order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id*. at 1964-65. However, *Twombley* does not create

---

[5]The Court's copy of the Motion includes EPE's seven exhibits. However, the Motion docketed in the Court's electronic filing system does not include the exhibits. Counsel for EPE will be directed to file the Motion's exhibits.

a heightened pleading standard, but rather clarifies that a pleading must comply with the requirements of Fed.R.Civ.P. 8(a).

This Court must take as true all allegations of material fact and construe them in the light most favorable to TEP. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

*Filed Rate Doctrine*

The "'filed rate doctrine provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by a federal agency in question.'" *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP Inc.*, 379 F.3d 641, 650 (9th Cir. 2004) (affirming dismissal of complaint barred by filed rate doctrine), *citing Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-30 (9th Cir. 2002).[6] Thus, "'the filed rate doctrine bars all claims – state and federal – that attempt to challenge [the terms of a tariff] that a federal agency has reviewed and filed.'" *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 853 (9th Cir. 2004), *citation omitted*. Indeed, the Supreme Court has stated that "the courts lack authority to impose a different rate than the one approved by" the federal regulatory agency, in this case FERC. *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981). Where a statute has committed to a federal agency the authority to approve rates filed pursuant to a statutory scheme, the filed rate "is made, for all purposes, the legal rate." *Keogh*, 260 U.S. at 163; *see also Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (electric utility "can claim no rate as a legal right that is other than the filed rate").

---

[6] "The filed-rate doctrine[] [is] also known as the 'filed-tariff doctrine,'" and the two terms are synonymous. *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000).

*Federal Power Act*

Under the Federal Power Act ("the Act"""), FERC has the "'exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce.'" *Trans. Agency of N. Cal.*, 295 F.3d at 928, *quoting New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982). FERC's exclusive jurisdiction extends to any matter that "directly affects rates[.]" *Trans. Agency of N. Cal.*, 295 F.3d at 930.

The FPA vests FERC with broad and exclusive jurisdiction over "the transmission of electric energy in interstate commerce," requires electric companies to file their rates with FERC, and directs FERC to determine the lawfulness of those rates. *See* 16 U.S.C. §§ 824(b)(1), 824d(e). Therefore, "[n]o court may substitute its own judgment . . . for the judgment of the Commission." *Ark. La. Gas Co.*, 453 U.S. at 577.

*TEP's Contract Claims*

EPE argues that the filed rate doctrine precludes courts from awarding contract damages that require the court to assume any rate other than the rate actually filed with and approved by the FERC. In support of this assertion, EPE cites to *Ark. La. Gas Co.* wherein the Supreme Court determined that FERC's predecessor agency's determination of a lawful rate preempted any conflicting state court finding and thus precluded the state courts from awarding the gas producers a higher rate through a breach of contract suit – even though the producers would have been entitled to the higher rate under the terms of the contract. 453 U.S. at 583-84. The Supreme Court determined that, by awarding contract damages, the state courts had 'usurped a function that Congress has assigned to a federal regulatory body," which "the Supremacy Clause [of the Constitution] will not permit." *Id*. at 572. EPE argues that the Supreme Court's holding in *Ark. La. Gas Co.* was based, in part, on the fact that "the Commission itself has no power to alter a rate retroactively," only prospectively. *Id*. at 578 (if FERC determines a rate to be unreasonable, "'it shall determine the just and reasonable rate . . . to be <u>thereafter</u> observed and in force'"), *citation omitted.* Indeed, EPE argues that FERC's inability to alter a filed rate retroactively underscores the need for courts

to refrain from doing so.

EPE further points out that courts have regularly recognized that the filed rate doctrine is not limited "'to rates per se,'" but instead extends to any matters that "directly affect[] rates," such as transmission capacity. *Trans. Agency of N. Cal.*, 295 F.3d at 930, *quoting Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966-67 (1986). Further, EPE asserts that "strict adherence to the filed rate has never been justified on the ground that the carrier is equitably entitled to that rate, but rather that such adherence, despite its harsh consequences in some cases, is necessary to enforcement of the Act." *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 131-32 (1990).

In applying these principles to the instant case, EPE argues that the FERC determined in April 2006 that the 1982 Agreement did not provide for free transmission service from Luna to Springerville or Greenlee; rather, the only filed rates in effect during TEP's claim period were the ones specified in EPE's OATT. TEP asserts, however, that the April 2006 Order did not alter, suspend, revoke or invalidate the 1982 Agreement, but instead interpreted the 1982 Agreement and accepted the 2006 OATT Interim Agreements as alternative filed rates.[7] TEP points out that FERC specifically found that the "1982 Agreement was filed at the Commission, accepted for filing via letter order dated March 11, 1983, and remains on file as a filed rate schedule of both [TEP] and El Paso." November 2008 Order, ¶ 10. TEP asserts that EPE's contention that some other rate was in effect cannot be squared with the FERC ruling. EPE asserts, however, that this ignores the fact that, in the April 2006 Order (and throughout the damages period), FERC held that the 1982 Agreement did not give TEP rights to free transmission service . . . when FERC reversed itself in the November 2008 Order, the Order was not retroactive, only prospective. Further, EPE asserts that, by finding that the terms of the OATT Interim Agreements required EPE to refund TEP's payments under the OATT, FERC confirmed in the November 2008 Order

---

[7]TEP asserts that FERC's November 2008 order revised its earlier interpretation of the 1982 Agreement.

1    that the EPE OATT was the applicable filed rate during the damages period.

2           Indeed, EPE argues that, if the Court were to award the damages sought be TEP, the

3    Court would have to reset the filed rates, contrary to the filed rate doctrine.  EPE asserts that

4    the November 2008 order confirms that the only filed and effective rates for transmission

5    service from Luna to Springerville or Greenlee before November 2008 were those set forth

6    in EPE's filed and approved OATT – FERC directed EPE to refund amounts TEP paid for

7    transmission service from 2006 to 2008, but under the terms of the interim service

8    agreements.  TEP asserts, however, that the FERC has determined that the 1982 Agreement

9    is the relevant filed rate and that the OATT, the April 2006 FERC Order, and the OATT

10   Interim Agreements did not alter the transmission rights under the 1982 Agreement.  TEP

11   also points out that the OATT Interim Agreements became nullities, by their own terms,

12   when FERC determined that the 1982 Agreement applied to transmission service from Luna

13   to Springerville or Greenlee.

14          Further, EPE asserts that, to award the damages sought by TEP would require the

15   Court to hypothetically assume that the filed rates set in EPE's OATT were ineffective and

16   that the 1982 Agreement, as interpreted by the November 2008 Order, was the effective rate

17   all along.  However, EPE asserts that the court may not "hypothetically" assume a rate not

18   set by FERC.  *Trans. Agency of N. Cal.*, 295 F.3d at 931.  TEP asserts that a hypothetical

19   rate is not at issue in this case because the price of the transmission service is determined

20   by the 1982 Agreement.  EPE asserts, however, that FERC, in the April 2006 Order, held

21   that the 1982 Agreement did not give TEP rights to free transmission service on EPE's

22   system from Luna to Greenlee; rather, EPE asserts that only filed rate for transmission

23   service from Luna to Greenlee from April 2006 to May 2007 was EPE's OATT.  EPE

24   asserts that, when FERC reversed itself, in November 2008, the order was not retroactive,

25   only prospective.  In effect, EPE is arguing that applying the rate, when FERC did not make

26   its November 2008 Order retroactive, would be applying a hypothetical rate, which TEP

27   acknowledges is not permitted.  In fact, EPE asserts that it would have been impossible for

28   EPE to comply with FERS's April 2006 Order (directing EPE not to provide TEP free

- 12 -

transmission service from Luna to Greenlee), while at the same time providing TEP free transmission service from Luna to Greenlee, as TEP's contract damages claim requires. EPE asserts that the April 2006 Order was binding when it was issued . . . until FERC changed its interpretation of the 1982 Agreement in November 2008.

Moreover, EPE argues that, even assuming EPE breached the 1982 Agreement, the Court cannot supplant the filed rates with the terms of the contract. EPE compares this factual situation to *Ark. La. Gas Co.*, wherein the Court determined that whether a state violation occurred did not affect the analysis. *Ark. La. Gas Co.*, 453 U.S. at 584 ("A finding that federal law provides a shield for the challenged conduct will almost always leave the state law violation unredressed."). TEP asserts, however, that while contract damages are barred when those claims are based on a non-filed rate, a hypothetical rate, or an altered rate, its claims are not barred by the field rate doctrine because FERC determined that the 1982 Agreement is the relevant filed rate . . . and TEP is seeking damages for EPE's breach of the 1982 Agreement.

EPE's arguments are based on its assertion, in its Motion to Dismiss, that the OATT Interim Agreements were filed with an approval by FERC. However, "[t]he fact that the FERC permits a rate schedule or notice of cancellation to become effective does not constitute approval by the FERC." 23A Fed.Proc., L.Ed. § 56.431, citing 18 C.F.R. § 35.4. Indeed, "[i]nterim utility rates fixed by a regulatory commission are not permanent or binding, but are fixed pending the outcome of a determination of a permanent rate, or in the case situations requiring emergency rates." 73B C.J.S. Public Utilities § 125, *citations omitted*. EPE has not provided any basis to conclude that FERC's approval actually constituted a "filing" of the rate.[8]

Moreover, "[t]he purpose of the rule against retroactivity, and the closely related filed rate doctrine, is to ensure predictability. *Pub. Util. Comm'n of California v. FERC*, 988

---

[8]Indeed, FERC's April 24, 2006, Order merely "accepted" the OATTs. *See* Motion, Ex. 1, ¶¶ 5 and 45. Further, the Order recognized that the OATT was not a permanent transmission agreement. *Id*. at ¶ 45.

F.2d 154, 163 (D.C.Cir. 1993). Therefore, the rule does not apply in situations where there is "adequate notice that resolution of some specific issue may cause a later adjustment to the rate being collected at the time of service." *Natural Gas Cleringhouse v. FERC*, 965 F.2d 1066, 1075 (D.C.Cir. 1992); *see also OXU USA, Inc. v. FERC*, 64 F.3d 679, 699 (D.C.Cir. 1995) ("The goals of equity and predictability are not undermined when the Commission warns all parties involved that a change in rates is only tentative and might be disallowed."). Indeed, providing notice turns retroactive ratemaking into a "functionally prospective process" by informing the relevant individuals that "the rates being promulgated are provisional only and [are] subject to later revision." *Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1075 (D.C.Cir.1992), *citations omitted*. EPE is, in effect, arguing that FERC's April 2006 Order removes any notice that EPE may have had that the OATT Interim Agreements may not be effective. However, whether or not EPE received adequate notice that the OATT Interim Agreements could be adjusted is a factual dispute that is not appropriate for consideration in a motion to dismiss. Rather, this Court must determine if TEP has alleged sufficient facts to state a claim of relief that is plausible. *Twombly*, 550 U.S. at 570.

The Court finds that TEP has alleged sufficient facts that the rate set forth in the OATT Interim Agreements were not the filed rate. Therefore, the filed rate doctrine does not bar TEP's claims. Indeed, TEP's allegations are based on the premise that TEP is seeking the relief of enforcing the filed rate as set forth in the 1982 Agreement, as approved by FERC and, therefore, does not require the Court to hypothetically assume a rate not set by FERC. Furthermore, because TEP's claims are based on allegations that FERC has determined that the 1982 Agreement rates are lawful, TEP is not requesting this Court to substitute its own judgment for the judgment of FERC. The FPA, therefore, does not bar TEP's claims.[9]

---

[9]The Court notes that TEP asserts that, even if the Court finds that the state-law claims are preempted, this Court can still hear this case because district courts have exclusive

*Preemption of State Law*

EPE asserts that TEP's claim are barred by federal preemption of state law. "Federal preemption of state law is rooted in the Supremacy Clause, Article VI, clause 2, of the United States Constitution." *Trans. Agency of N. Cal.*, 295 F.3d at 928. Absent express preemption, federal law may preempt state law in two ways: field preemption and conflict preemption. "Under field preemption, '[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is preempted.'" *Dynegy*, 375 F.3d at 849, *quoting Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Under conflict preemption, "state law is . . . pre-empted . . . when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* TEP points out that courts must start with "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 129 S.Ct. 1187, 1194-95 (2009), *citation omitted*.

EPE argues that both preemption principles apply here. Because FERC regulates the rates for interstate transmission of energy, EPE argues that TEP's claims are barred by field preemption. EPE asserts that although TEP's Complaint is cast as an action for contract damages, that "[does] not rescue it" from field preemption. *Grays Harbor*, 379 F.3d at 648-49 (contract claims were barred by field preemption). EPE asserts that, as in *Grays Harbor*, "'to resolve [TEP's] claims and provide it the damages it seeks, the Court would be

jurisdiction over the enforcement of "rules, regulations, and orders" of FERC under the Act. 16 U.S.C. § 825p. TEP argues that several courts have found that claims to enforce filed tariffs or filed rate contracts fall within this section, on the theory that a filed rate is similar to a FERC order. *See e.g., Dynegy*, 375 F.3d at 842-43. Indeed, "[t]he District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equita and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p; *see also Dynegy*, 375 F.3d at 843 ("jurisdiction lies [in the district courts] over a claim to enforce obligations that squarely fall within the exclusive jurisdiction provision [of 16 U.S.C. § 825p]").

- 15 -

expressly required to assume a hypothetical rate different from that actually set by FERC. This, the Court cannot do.'" *Id.* at 649, *citation omitted*. While TEP agrees that Congress has occupied the field of setting interstate electric rates, it asserts that Congress has not occupied the field of contract law for filed rate contracts. TEP points out that Congress has been silent on issues such as capacity, consideration, methods of interpretation and the like. In other words, TEP asserts that while state law claims seeking to alter a filed rate contract are barred, suits to enforce such contracts are not. Indeed, TEP distinguishes this case from *Grays Harbor* on the basis that the claim in *Grays Harbor* was subject to field preemption because it would have required the court to "determine the fair price of the electricity." 379 F.3d at 649.

The Court agrees with TEP's assertion that, in this case, the Court need not inquire into the fair price of the electricity. Rather, FERC has already determined that the rate set forth in the 1982 Agreement is appropriate. TEP's contract claims do not "necessarily intrude upon the rate-setting jurisdiction of FERC" because TEP's claims do not require this Court to determine the "what the 'fair' rate would have been." *Grays Harbor*, 379 F.3d at 652.

EPE asserts that TEP's claims are also barred by conflict preemption because TEP's contract claims would interfere with FERC's regulation of rates for transmission of electricity. "To permit [TEP] to receive in its court action what is essentially a refund would create a conflict with FERC's authority over wholesale rates. And such a result would make state law stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress under the [Act]." *Id.* at 650 (holding that plaintiff's contract claims were also barred by conflict preemption). EPE asserts that, if TEP's claims are allowed to proceed, a decision on the merits or an award of damages in this action would interfere and potentially conflict with the ongoing FERC proceedings. Further, EPE asserts that, even if the FERC proceedings were not at issue in this case, "the mere fact that [TEP] brought this suit under state law would not rescue it [from preemption], for when congress has established an exclusive form of regulation, 'there can be no divided authority.'" *Ark. La.*

*Gas Co.*, 453 U.S. at 580, *citation omitted*. TEP asserts that EPE could have complied with the Act and Arizona contract law simply by not breaching its obligations under the 1982 Agreement. TEP further asserts that no congressional "purpose" is served by allowing utilities to breach their filed rate contracts.

TEP argues that it is well-established that plaintiffs may bring state-law breach of contract claims to enforce filed rate contracts. *See Pan Am. Petroleum Corp. v. Superior Court*, 366 U.S. 656, 666 (1961) (state courts could hear breach of contract cases involving filed rate contracts); *Gulf States Utils. C. v. Alabama Power Co.*, 824 F.2d 1465, 1471-72, *as amended* 831 F.2d 557 (5th Cir. 1987) (state law contract claims are not preempted by the Act as long as the claims do not challenge the filed rate); *see also Wagner & Brown v. ANR Pipelin Co.*, 837 F.2d 199, 202 (5th Cir. 1988) (FERC does not have exclusive jurisdiction over contract claims). Indeed, TEP asserts that *Ark. La. Gas Co.* did not hold that breach of contract actions to enforce a filed rate are barred, but that actions based on a hypothetical rate are barred. Furthermore, TEP asserts that FERC has had a long-standing view that courts have jurisdiction over state-law breach of contract cases, as long as the case seeks to enforce or interpret a contract, rather than alter it. *See City of Glendale v. Portland Gen. Elec. Co.*, 113 FERC ¶ 61,285 (December 19, 2005) at paragraph 16; *Kentucky Utils. Co.* 110 FERC ¶ 61,285 (March 15, 2005) at paragraphs 10-11 (same).

The Court agrees with TEP that the enforcement of the 1982 Agreement would not create a conflict with FERC's authority. Rather, FERC has determined that the 1982 Agreement provides the filed rate and this action simply seeks to enforce FERC's determination.

*Ongoing FERC Proceedings*

EPE asserts that, at a minimum, this matter must be stayed pending a final decision by FERC. EPE argues that the doctrine of primary jurisdiction requires courts to let administrative agencies such as FERC "have the first word," and it applies where the agency has "special competence" over the issue to be decided. *United States v. W. Pac. R.R.*, 352

U.S. 59, 64 (1956) (where "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . the judicial process is suspended pending referral of such issues to the administrative body"); *accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1115-16 (9th Cir. 2008) (affirming referral of claims regarding telephone service to FCC); *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199 (5th Cir. 1988) (affirming dismissal of action for breach of utility purchase contract, deferring to primary jurisdiction of FERC). EPE asserts that FERC not only has special competence over interstate power transmission issues; it presently has under consideration the merits of the parties' constructions of the contract at issue and its prior decision to grant TEP a refund under the terms of the interim service agreements. EPE asserts that a dismissal or a stay is appropriate to avoid inconsistent results.

TEP asserts, however, that FERC decided in the November 2008 Order that TEP has the right to have up to 200 MW of power transmitted from Luna to either Greenlee or Springerville in accordance with the rates, terms and conditions specified in the 1982 Agreement and that TEP is not seeking to relitigate those issues in this case. Rather, TEP seeks damages for the breach of contract validated by FERC. Moreover, TEP asserts that a stay is not appropriate because FERC issued a final decision. 18 C.F.R. § 385.713(a)(2)(i); *City of Freemont v. FERC*, 336 F.3d 910, 914 (9th Cir. 2003), *quoting Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 239 (D.C. Cir. 1980). Indeed, TEP argues that the Application for Rehearing does not operate as a stay of the November 2008 Order. 16 U.S.C. § 8251(a) and (c). TEP points out that FERC could have ordered a stay of the use of the filed rate while the motion for rehearing was pending, but has chosen not to.

As pointed out by EPE, there is a three part test for determining whether the Court should exercise jurisdiction to review a FERC order. In addition to whether the decision is "final," the Ninth Circuit also considers whether (1) the order, if not reviewed, would inflict irreparable harm on the party seeking review, and (2) whether judicial review at this stage

of the process would invade the province reserved to the discretion of the agency. *City of Fremont v. FERC*, 336 F.3d 910, 913-14 (9th Cir. 2003). at 913-14. EPE asserts that TEP would not suffer irreparable harm if this matter is stayed because TEP seeks only money damages – if TEP's claim is valid, it would still be valid after FERC's order becomes final and non-appealable. If, however, FERC or a federal appellate court reverses the November 2008 Order, any award this Court makes to TEP would be erroneous and inconsistent.

TEP, however, asserts that FERC often declines primary jurisdiction in cases involving enforcement or interpretation of contracts. *City of Glendale v. Portland Gen. Elec. Co.*, 113 FERC ¶ 61,285 (December 19, 2005) at paragraphs 15-17 (declining primary jurisdiction over contract dispute); *Kentucky Utils. Co.*, 110 FERC ¶ 61,285 (March 15, 2005) at paragraphs 10-11(same; noting that FERC "has no special expertise" as compared to courts over contract interpretation issue); *accord Portland Gen. Elec. Co.*, 72 FERC ¶ 61,009 (July 5, 1995). These FERC precedents each apply the three-part test that originates from a seminal 1979 FERC order, *Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61,175 *reh'g denied* 8 FERC ¶ 61,031 (1979). TEP asserts that this is not a case in which FERC has a basis to exercise primary jurisdiction. *See Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61,175 *reh'g denied* 8 FERC ¶ 61,031 (1979) (three part test considered to determine whether exercise of primary jurisdiction is appropriate: (1) whether the Commission has some "special expertise"; (2) whether there is a need for "uniformity of interpretation"; and (3) whether the case is "distant in relation to the regulatory responsibilities" of FERC). TEP asserts that FERC lacks any special expertise in contract damages actions, that there is no issue of "uniformity of interpretation" because FERC has already interpreted the 1982 Agreement, and the issue is distant in relation to FERC's authority because FERC lacks the power to award contract damages of the type sought in this lawsuit.

While FERC is presently reviewing its Order pursuant to EPE's Application for Rehearing, FERC has issued a final decision and has not stayed that decision. Considering the current status of the FERC proceedings, the Court determines that there is no basis to

conclude that proceeding in this case will result in inconsistent results with the FERC proceedings. However, FERC's determination that, despite the April 2006 FERC Order, TEP is entitled to a refund is still subject to appellate review. This determination may result in inconsistent results with the pending matter (i.e., if the appellate court determines that the parties appropriately relied on the OATT Interim Agreements, the Court's findings herein may be inconsistent with such a ruling).

Moreover, if TEP's claim is valid, it will still be valid after FERC's order is no longer subject to review. In considering TEP's interest in money damages against the possible inconsistent results with the possible appellate review of the FERC order, the Court finds that TEP will not suffer irreparable harm if this matter is stayed. The Court finds a stay of this matter is appropriate.

*Conclusion*

The Court has determined that the filed rate doctrine, the FPA, and state preemption do not bar TEP's claims. However, because proceeding with the claims may result in inconsistent determinations with any appellate review of the FERC proceedings, the Court has determined that a stay of the proceedings is appropriate.

Accordingly, IT IS ORDERED:

1. Counsel for EPE shall electronically file a copy of the Motion's exhibits.

2 EPE's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for a Stay [Doc. # 12] is GRANTED IN PART and DENIED IN PART.

3. This matter is stayed pending resolution of the FERC proceedings and any appeal.

4. Counsel for TEP shall file a status report with the Court on May 1, 2010, and every six months thereafter.

5. EPE shall file any Answer within 20 days of resolution of the FERC proceedings and its appellate proceedings or the time for seeking review of

those proceedings expires.

6.    Should EPE fail to timely file an Answer, TEP shall file a status report with the Court within 30 days of resolution of the FERC proceedings, of its appellate proceedings, and of the time for seeking review of those proceedings.

DATED this 10th day of September, 2009.


_____
Cindy K. Jorgenson
United States District Judge